██ CHRISTOPHER J. KIEPER, Respondent, v THE FUSCO GROUP PARTNERS INC., Doing Business as WORLDCLAIM GLOBAL CLAIMS MANAGEMENT, et al., Appellants. [59 NYS3d 561]—

Aarons, J. Appeal from an order of the Supreme Court (Nolan Jr., J.), entered March 17, 2016 in Saratoga County, which denied defendants' motion for summary judgment dismissing the complaint.

From September 1999 to January 2012, plaintiff was employed by defendant The Fusco Group Partners Inc. (hereinafter WorldClaim), of which defendant Andrew Fusco (hereinafter Fusco) was the president. WorldClaim acts as a client liaison for individuals who, after suffering a casualty loss, sought insurance payments from their insurer. Plaintiff was a salesperson whose job for WorldClaim was to obtain clients and have them sign a contract whereby WorldClaim would serve as their liaison to adjust their loss. In addition to being paid a salary, plaintiff would receive a commission depending, in part, on the amount of money recovered on behalf of a client.

In January 2012, plaintiff resigned from WorldClaim. Plaintiff commenced this action alleging causes of action for breach of contract and a violation of Labor Law § 193.[1] In par-

---

1. Plaintiff indicates in his brief that he is no longer pursuing his claim against Fusco in his individual capacity or the claim alleging a violation of Labor Law § 191.

ticular, plaintiff alleged that defendants failed to pay him, as relevant here, commissions totaling $104,525 and monthly bonuses totaling $25,000 for the time period between April 2011 and January 2012. Defendants thereafter moved for summary judgment seeking dismissal of the complaint. Supreme Court denied defendants' motion. Defendants now appeal.

Turning first to plaintiff's claim for unpaid commissions, at the outset, we reject defendants' assertion that such claim is barred by the statute of frauds. "An agreement to pay an at-will employee commissions earned during the period of his or her employment is capable of performance within one year and does not violate the [s]tatute of [f]rauds" (*Strauss v Fleet Mtge. Corp.*, 282 AD2d 736, 736 [2001] [citations omitted]; *see Cron v Hargro Fabrics*, 91 NY2d 362, 371 [1998]; *Moshan v PBM, LLC*, 141 AD3d 496, 497 [2016]; *Gold v Benefit Plan Adm'rs*, 233 AD2d 421, 421 [1996]). Here, the gravamen of plaintiff's complaint is not about renewal commissions that accrued after his resignation from WorldClaim (*see e.g. Gersten-Hillman Agency, Inc. v Heyman*, 68 AD3d 1284, 1287 [2009]; *Guterman v RGA Accessories*, 196 AD2d 785, 785 [1993]; *Warner & Whitney v Union Camp Corp.*, 166 AD2d 776, 776-777 [1990]). Rather, plaintiff seeks the payment of commissions that he claims were earned while he was still employed by WorldClaim (*cf. Miloscia v B.R. Guest Holdings, LLC*, 94 AD3d 563, 564 [2012]). Indeed, the complaint alleged that plaintiff, "[d]uring the period from approximately April 2011 to January 2012, . . . earned $104,525 in commissions from sales, [and] $25,000 in monthly bonuses." Given that plaintiff was still employed by WorldClaim during this alleged time period, the statute of frauds does not bar plaintiff's claim for unpaid commissions (*see White v Purchasing Support*, 249 AD2d 991, 991 [1998]; *Murphy v CNY Fire Emergency Servs.*, 225 AD2d 1034, 1035 [1996]).

To that end, the question distills to whether plaintiff earned the commissions alleged in the complaint. " 'Once the commission is earned, it cannot be forfeited' " (*Devany v Brockway Dev., LLC*, 72 AD3d 1008, 1009 [2010], quoting *Arbeeny v Kennedy Exec. Search, Inc.*, 71 AD3d 177, 182 [2010]). "Whether a commission is earned is dependent upon the terms of the agreement providing for such commission" (*Gennes v Yellow Book of N.Y., Inc.*, 23 AD3d 520, 521 [2005] [citations omitted]).

Plaintiff's claim for unpaid commissions centers on the employment agreement providing that "[plaintiff] shall be paid a commission on all fees generated by [plaintiff] and collected by WorldClaim." Contrary to defendants' argument, we do not

read this provision as unambiguously stating that plaintiff, upon the cessation of his employment with WorldClaim, would not be entitled to be paid earned commissions (*see Yudell v Israel & Assoc.*, 248 AD2d 189, 189-190 [1998]; *compare Morrow v MVP Health Plan*, 307 AD2d 627, 627-628 [2003]; *Dwyer v Burlington Broadcasters*, 295 AD2d 745, 745-746 [2002], *lv denied* 98 NY2d 611 [2002]). The provision at issue does not expressly state that current employment with WorldClaim is a condition to receive earned commissions.

Furthermore, as to that part of the provision in the employment agreement stating that a commission would be paid on all fees "generated" by plaintiff, we find such term to be ambiguous. In this regard, the employment agreement does not expound upon this term nor does the record provide any clarification as to what it means for a fee to be "generated" by plaintiff. Fusco testified that plaintiff's job entailed signing a loss and "stay[ing] in contact with the client until the claim is settled." Fusco acknowledged that signing a loss comprised the bulk of plaintiff's duties, but he also stated that plaintiff needed to be "a liaise between the adjusters and the clientele." In contrast, plaintiff testified that it was his job "to bring the business into the company" and that he "didn't adjust claims." Plaintiff further explained that "[he] did [his] job in signing the loss up." According to plaintiff, once he signed a client, he no longer worked with the client and someone else handled the claim. In view of the foregoing, we conclude that the record discloses triable issues of fact as to whether plaintiff, under the terms of the employment agreement, earned the commissions alleged in the complaint (*see Van Etten Oil Co., Inc. v Aero Star Petroleum, Inc.*, 131 AD3d 740, 741 [2015]).[2]

We also disagree with defendants' interpretation that plaintiff's right to earn a commission did not vest until a fee was actually collected by WorldClaim. Indeed, Fusco testified that it could take up to 18 months to settle or adjust a claim, meaning that it could take longer for a fee to be received. While plaintiff had an interest in a client's claim being settled or adjusted so that a fee could be collected, which, in turn, would lead to the payment of a commission, plaintiff testified that "[his] job wasn't to collect the money for WorldClaim." Addition-

2. We reject defendants' reliance upon the terms in the employee handbook inasmuch as the handbook contained a specific disclaimer stating that it was not a contract of employment, there was no evidence indicating that plaintiff assented to the terms therein and the employment agreement stated that such agreement "constitute[d] the entire understanding and agreement" between the parties (*see generally Lobosco v New York Tel. Co./ NYNEX*, 96 NY2d 312, 317 [2001]).

ally, if WorldClaim required the assistance of another employee to collect a fee, plaintiff would not lose the commission; rather, plaintiff's share could decrease. Accordingly, even though a commission could not be practically paid until the fee was received by WorldClaim, such payment had no bearing on whether plaintiff earned a commission in the first instance (*see Gold v Benefit Plan Adm'rs*, 233 AD2d at 421).

As to plaintiff's claim for unpaid bonuses, we conclude that an issue of fact exists regarding whether the bonuses were discretionary or part of plaintiff's compensation (*see Doolittle v Nixon Peabody LLP*, 126 AD3d 1519, 1520 [2015]; *Mirchel v RMJ Sec. Corp.*, 205 AD2d 388, 389-390 [1994]; *compare De Madariaga v Union Bancaire Privée*, 103 AD3d 591, 591 [2013], *lv denied* 21 NY3d 854 [2013]). Here, a 2011 addendum to the employment agreement provided that plaintiff would "have an opportunity to earn a bonus" when certain thresholds were met. The 2011 addendum, however, also stated that, "[a]t the end of each month, depending on the loss projections it will be determined if the month qualifies for the bonus incentive. A bonus will be paid when the claims signed in the qualified month are all paid in full or at least when the total paid on fees to WorldClaim reaches the agreed upon figure." In view of the mandatory language that plaintiff "will" receive a bonus depending on the fulfillment of certain thresholds and plaintiff's testimony that a bonus would be paid if a certain amount of losses were signed in a particular month, summary judgment was properly denied with respect to plaintiff's claim for unpaid bonuses (*see Caruso v Allnet Communication Servs.*, 242 AD2d 484, 485 [1997]). Finally, in light our disposition, summary dismissal of the third cause of action alleging a violation of Labor Law § 193 is inappropriate (*see Doolittle v Nixon Peabody LLP*, 126 AD3d at 1522).[3]

Garry, J.P., Egan Jr., Lynch and Mulvey, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as denied defendants' motion for summary judgment dismissing the second cause of action and all claims asserted against defendant Andrew Fusco individually; motion granted to said extent; and, as so modified, affirmed.

---

3. Defendants' contention that plaintiff did not oppose their motion for summary judgment insofar as it sought dismissal of the Labor Law § 193 claim is belied by the record.